# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| MONROE COUNTY BOARD OF COMMISSIONERS, et al., | )<br>)<br>) |
| *Plaintiffs*, | ) Case No. 1:24-cv-01560-TWP-KMB<br>)<br>) |
| v. | )<br>) |
| UNITED STATES FOREST SERVICE, et al., | ) **SUPPLEMENTAL**<br>) **DECLARATION OF**<br>) **DR. MITCHELL-BRUKER** |
| *Defendants*. | )<br>) |

1.  I am the founder and President of Friends of Lake Monroe, one of the plaintiff-organizations in the above-captioned matter. I am offering this declaration in support of Plaintiffs' Motion for Summary Judgment, ECF No. 24, which challenges the U.S. Forest Service's ("the Service's") Houston South Vegetation Management and Restoration Project ("Project"), the largest and most expensive logging and forest burning project in the history of the Hoosier National Forest ("the Forest").

2.  This is the third time this Project has been challenged in this Court. *See Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* ("*Monroe I*"), 595 F. Supp. 3d 713 (S.D. Ind. 2022) (Pratt, C.J.); *see also Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* ("*Monroe II*"), No. 4:23-cv-00012-TWP-KMB, 2023 WL 2683125 (S.D. Ind. Mar. 29, 2023) (Pratt, C.J.).[1] In *Monroe II*, a case challenging the Service's efforts to sidestep a significance determination for the Project by preparing a Supplemental Information Report ("SIR"), I submitted two

---

[1] Copies of the Court's merits decisions in both *Monroe I* and *II*, as docketed, appear in the administrative record at AR0010887-907 (*Monroe I*) and AR0010908-28 (*Monroe II*).

1

declarations in support of the Plaintiffs' Motion for Preliminary Injunction, which the Court ultimately granted. *See Monroe II*, 2023 WL 2683125 at *10; *see also* Decls. of Dr. Sherry Mitchell-Bruker, *Monroe II*, 4:23-cv-00012-TWP-KMB (S.D. Ind.), ECF No. 20-5 (Feb. 16, 2023), ECF No. 24-1 (March 8, 2023). In granting the preliminary injunction in *Monroe II*, this Court explained that my declarations "identif[ied] with specificity how the Project will irreversibly harm Plaintiffs' longstanding interests in Lake Monroe's water quality, public health, and safety," and relied in part on my declarations in ultimately finding that "irreparable harm is sufficiently likely to occur when considering the risks posed by the Project to the environment and the impact it may have on the health and safety of Indiana's citizens." *Monroe II*, 2023 WL 2683125 at *7.[2]

3. I submitted a third declaration in this case, also (like this declaration) in support of Plaintiffs' Motion for Summary Judgment. *See* Decl. of Dr. Sherry Mitchell-Bruker, *Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* ("*Monroe III*"), No. 1:24-cv-01560-TWP-KMB (S.D. Ind. Nov. 7, 2024), ECF No. 24-2. In that declaration, I described my background, including highly relevant technical training and professional experience, and some of the threats facing Lake Monroe (or, "the Lake"), Indiana's largest lake and the sole municipal drinking water source for more than 145,000 residents of Bloomington, including myself, because I felt that this information would be helpful in illustrating the significant problems facing Lake Monroe and why the Project will inexorably exacerbate them. *See id.* ¶¶ 2-5, 9-18.

4. My prior declaration also describes: the specific personal and professional interests I have in Lake Monroe itself and ensuring that potential impacts to the Lake are

---

[2] File-stamped copies of my declarations were provided to the Service as comments on the Project so they can be found in the administrative record for this matter. *See* AR0011553-AR0011562; AR0011563- AR0011570.

properly documented, studied, and disclosed to the public, ECF No. 24-2 ¶¶ 6-8; how those interests have been or will be harmed by the Project itself and defects in Defendants' environmental review process, *id.* ¶¶ 11-18; and why I believe those injuries will be remedied by a favorable decision in this case, *id.* ¶ 19.

5.     It is my understanding that the Defendants in this suit have argued for the first time that I cannot challenge the Project or the agency's justifications for it in federal court because they say I lack a "concrete" or "particularized" interest in Lake Monroe, even though I have dedicated almost a decade of my life to the Lake's conservation, including founding and leading an organization, Friends of Lake Monroe, that is solely focused on the protection and enhancement of Lake Monroe, its water quality, and the safety of its drinking water. Although I believe I should be permitted to vindicate my long-standing personal and professional interests in Lake Monroe based on my existing submissions to the Court, the ecological welfare of Lake Monroe is too important and the Project's threats to the Lake too significant to take any chances. Thus, out of an abundance of caution, I submit this declaration to clarify and/or expand upon mine and Friends of Lake Monroe's shared interests in the Lake and its watershed so as to quell any doubt about Plaintiffs' standing to defend their interests in federal court.

6.     As I explained in my prior declaration, I maintain a strong personal interest in Lake Monroe. For example, I am an avid kayaker and have been for the past twenty years. Although I used to go kayaking on Lake Monroe approximately once per month, I have since cut back to kayaking on Lake Monroe several times per year. One of the main reasons that I do not kayak more frequently on Lake Monroe is the Lake's water quality, which continues to lag behind water quality metrics in comparable waterbodies. While I have reduced the number of

kayak trips I make per year, I do have concrete plans to kayak on Lake Monroe in the future, including during the upcoming spring, summer, and fall (2025) seasons.

7. I am an outdoor and nature enthusiast, and have been since childhood. Experiencing the natural world firsthand on Lake Monroe from the seat of my kayak brings me immense joy and engenders within me a sense of serenity. The beneficial effects on human health from exposure to nature are well documented. *See, e.g.*, Marcia P. Jimenez et al., *Associations Between Nature Exposure and Health: A Review of the Evidence*, 9 INT'L J. ENV'T RSCH. PUB. HEALTH 4790 (2021), https://doi.org/10.3390/ijerph18094790. During my regular kayak trips on Lake Monroe, I enjoy searching for and viewing the different kinds of flora and fauna that depend on the Lake as habitat, including various species of freshwater turtles and waterfowl—all of which will be adversely affected by the additive sediment and pollution that the Houston South project will contribute to the Lake Monroe watershed, and ultimately the Lake itself.

8. Kayaking is not my only personal recreational interest in Lake Monroe. I also occasionally sail on the Lake (usually a few times per year), and I have concrete plans to do so later this year. I would also swim regularly in Lake Monroe if its water quality were to improve. As of now, however, I no longer swim in the Lake because I almost always feel ill after doing so. I do not experience similar illness after swimming in other lakes with better water quality that are not regularly considered eutrophic.

9. Because I am a hydrologist with specific knowledge about and training in subjects like surface-water flows, sediment transport, and hydroecology, I am acutely aware of the symptoms and causes of eutrophication when I see it during my trips to Lake Monroe. As my prior declaration explains, eutrophic (or "hypereutrophic") conditions are often "associated with

harmful ecological effects (e.g., decreased biodiversity), toxicity, and health impacts to humans caused by harmful algal blooms that thrive in eutrophic conditions." ECF No. 24-2 ¶ 9. When elevated levels of organic matter (namely, nitrogen and phosphorous) are carried to the Lake via the well-documented process of sedimentation, the Lake's water quality is negatively affected; the water's clarity declines and it takes on an unsettling opaque greenish hue. The addition of phosphorous and nitrogen to Lake Monroe via sediment pulses (like those expected to recur regularly from the Project) also catalyzes the growth of cyanobacteria that can be toxic to humans, aquatic wildlife, and certain plants, leading to now-common swimming and public health advisories on the Lake under certain conditions.

10.     Because of my work with Friends of Lake Monroe, including the development of the Lake Monroe Watershed Management Plan, which is based on data collected at several spots throughout the Lake, I am aware of the causes of and contributors to eutrophication in Lake Monroe specifically. The causes of and/or contributors to eutrophication in Lake Monroe include forestry management practices like those encompassed by this Project (e.g., prescribed burning, timber harvesting, broadcast herbicide application). Because of my work with the U.S. Forest Service, including implementing, verifying, and documenting the very same Best Management Practices ("BMPs") the Service plans to deploy during this Project (among others), I am aware that although BMPs can *reduce* the effect of a given project, BMPs cannot and do not *eliminate* all project effects (such as sediment and nutrient transfer in a watershed containing slopes like those in the Project area) on the environments in which those projects are implemented. Based on the Service's statements in the record, including in the Finding of No Significant Impact ("FONSI") for the Project, it is my understanding that the Service declined to examine the Project's cumulative impact on the environment, including on Lake Monroe, because the Service

believes (albeit wrongly) that BMPs will eliminate all Project impacts, including those to Lake Monroe. The Service has not validated the projected total efficacy of its BMPs in either literature or with substantiating data. Based on my review of the Project documents and on my past experience with implementing BMPs (including for the Service)—as well as my review of the Hoosier National Forest's dismal record of BMP implementation and efficacy for projects much smaller than the immense action currently before the Court—I continue to conclude that the Service's estimate of the efficacy of those BMPs for this Project is overly optimistic, which substantially distorts and greatly undervalues the true extent of the Project's effects.

      Pursuant to 28 U.S.C. § 1746, I hereby I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

| January 28, 2025 | *Sherry Mitchell-Bruker* |
|---|---|
| Dated | Dr. Sherry Mitchell-Bruker |