**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MONROE COUNTY BOARD OF COMMISSIONERS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-1560-TWP-KMB |
| UNITED STATES FOREST SERVICE, *et al.*, | ) ) ) | |
| Federal Defendants. | ) ) ) | |

**REPLY IN SUPPORT OF FEDERAL DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

    I.     Plaintiffs Have Not Established Standing................................................................ 2

          A.    Plaintiff Monroe County Board of Commissioners Lacks Standing .......... 3

          B.    The Stant Declaration Is Untethered to the Only Claim in this Case ......... 5

          C.    The Mitchell-Bruker Declarations Do Not Allege an Injury Caused by the Project ............................................................................................... 7

    II.    Federal Defendants Complied with NEPA .......................................................... 8

          A.    The Forest Service Reasonably Concluded that the Project Will Not Significantly Affect Lake Monroe ............................................................. 9

          B.    The Forest Service Was Not Required to Complete an EIS .................... 14

               1.    The Forest Service Considered the Context of the Project ........... 16

               2.    The Project Is Not Highly Controversial ...................................... 17

               3.    The Project Does Not Significantly Impact Public Health or Safety ........................................................................................... 18

               4.    The Project's Cumulative Effects Will Not Be Significant........... 19

               5.    No "Unique Characteristics" Warrant an EIS .............................. 20

    III.    Plaintiffs Failed to Respond to Evidentiary Objections....................................... 21

    IV.    Remedy ............................................................................................................. 21

CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez,*
    458 U.S. 592 (1982) .................................................................................................. 4

*Allied-Signal, Inc. v. United States Nuclear Regul.Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ................................................................................ 21

*Black Oak Energy, LLC v. FERC,*
    725 F.3d 230 (D.C. Cir. 2013) ................................................................................ 21

*Black Warrior Riverkeeper, Inc. v. United States Army Corps of Eng'rs,*
    781 F.3d 1271 (11th Cir. 2015) ............................................................................... 22

*Blue Mountains Biodiversity Project v. Jeffries,*
    99 F.4th 438 (9th Cir. 2024) ................................................................................... 16

*California v. Bernhardt,*
    472 F. Supp. 3d 573 (N.D. Cal. 2020) ................................................................... 17

*Cascade Forest Conservancy v. United States Forest Serv.,*
    577 F. Supp. 3d 1163 (W.D. Wash. 2021) ............................................................. 20

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971) .................................................................................................. 8

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .................................................................................................... 3

*City of North Miami v. Fed. Aviation Admin.,*
    47 F.4th 1257 (11th Cir. 2022) ................................................................................. 4

*City of Rohnert Park v. Harris,*
    601 F.2d 1040 (9th Cir. 1979) .................................................................................. 5

*Clapper v. Amnesty Intern. USA,*
    568 U.S. 398 (2013) .................................................................................................. 5

*Comm. to Save the Rio Hondo v. Lucero,*
    102 F.3d 445 (10th Cir. 1996) .................................................................................. 6

*Dep't of Transp. v. Pub. Citizen,*
    541 U.S. 752 (2004) ........................................................................................... 15, 16

*Fla. Power & Light Co. v. Lorin,*
    470 U.S. 729 (1985) ................................................................................................ 21

*ForestKeeper v. La Price*,
   270 F. Supp. 3d 1182 (E.D. Cal. 2017) ............................................................ 21

*G & S Holdings LLC v. Continental Cas. Co.*,
   697 F.3d 534 (7th Cir. 2012) .......................................................................... 3

*Godfrey v. United States*,
   997 F. 2d 335 (7th Cir. 1993) ....................................................................... 12

*Habitat Educ. Ctr. v. United States Forest Serv.*,
   593 F. Supp. 2d 1019 (E.D. Wis. 2009) ....................................................... 14

*Habitat Educ. Ctr., Inc. v. United States Forest Serv.*,
   673 F.3d 518 (7th Cir. 2012) ................................................................... 13, 20

*Henderson ex rel. Henderson v. Shinseki*,
   562 U.S. 428 (2011) ........................................................................................ 2

*Highway J. Citizens Grp. v. Mineta*,
   349 F.3d 938 (7th Cir. 2003) ..................................................................... 9, 10

*In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*,
   481 F.2d 122 (9th Cir. 1973) .......................................................................... 4

*Ind. Forest All. Inc. v. United States Forest Serv.*,
   325 F.3d 851 (7th Cir. 2003) ........................................................ 2, 8, 10, 15, 17

*Ind. Forest All., Inc. v. United States Forest Serv.*,
   No. 99-cv-214, 2001 WL 912751 (S.D. Ind. July 5, 2001) ......................... 15

*Lewis v. Casey*,
   518 U.S. 343 (1996) ....................................................................................... 6

*Little Co. of Mary Hosp. v. Sebelius*,
   587 F.3d 849 (7th Cir. 2009) ........................................................................ 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 3, 6

*Lujan v. Nat'l Wildlife Fed.*,
   497 U.S. 871 (1990) ....................................................................................... 6

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) ................................................................................... 8, 13

*Monroe Cnty. Bd. of Comm'rs v. United States Forest Serv.*,
   4:23-cv-12-TWP-KMP, 2023 WL 2683125 (S.D. Ind. Mar. 29, 2023) ................. 1, 8

*Monroe Cnty. Bd. of Comm'rs v. United States F*orest Serv.,
   595 F. Supp. 3d 713 (S.D. Ind. 2022) ................................................ 1, 9, 15, 20, 21

*Mountain States Legal Found. v. Glickman*,
   92 F.3d 1228 (D.C. Cir. 1996) ................................................................... 3, 5

*Nat'l Parks Conservation Ass'n v. United States*,
   177 F. Supp. 3d 1 (D.D.C. 2016) ........................................................... 18, 19

*Nat'l Wildlife Fed. v. United States Army Corps of Eng'rs*,
   170 F. Supp. 3d 6 (D.D.C. 2016) ................................................................... 7

*Nat'l Wildlife Fed'n v. United States Army Corps of Eng'rs.*,
   75 F.4th 743 (7th Cir. 2023) .......................................................................... 2

*Native Ecosystems Council v. United States Forest Serv.*,
   428 F.3d 1233 (9th Cir. 2005) ................................................................ 16, 17

*Nevada Land Action Ass'n v. United States Forest Serv.*,
   8 F.3d 713 (9th Cir. 1993) ............................................................................. 5

*Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*,
   457 F.3d 941 (9th Cir. 2006) ......................................................................... 7

*Palmer v. Marion Cnty.*,
   327 F.3d 588 (7th Cir. 2003) ....................................................................... 20

*Parvati Corp. v. City of Oak Forest, Ill.*,
   630 F.3d 512 (7th Cir. 2010) ......................................................................... 5

*Port of Astoria v. Hodel*,
   595 F.2d 467 (9th Cir. 1979) ......................................................................... 3

*Protect Our Parks, Inc. Buttigieg*,
   97 F.4th 1077 (7th Cir. 2024) ................................................................... 2, 15

*Protect Our Parks, Inc. v. Buttigieg*,
   39 F.4th 389 (7th Cir. 2022) ............................................................ 6, 10, 18

*Roberstson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989) .............................................................................. 9, 10

*Sauk Prairie Conservation All. v. United States Dep't of the Interior*,
   944 F.3d 664 (7th Cir. 2019) ....................................................................... 14

*Sequoia ForestKeeper v. La Price*,
   723 F. App'x 481 (9th Cir. 2018) ................................................................ 21

*State of N.C. v. Fed. Aviation Admin.*,
   957 F.2d 1125 (4th Cir.1992) ...................................................................... 17

*State of Wisconsin v. Weinberger*,
   745 F.2d 412 (7th Cir. 1984) ....................................................................... 15

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .................................................................................... 6

*Town of Chester v. Laroe Estates, Inc.*,
   581 U.S. 433 (2017) .................................................................................... 3

*Town of Milton, Mass. v. Fed. Aviation Admin.*,
    87 F.4th 91 (1st Cir. 2023) ................................................................................... 4

*United States v. Chemical Found., Inc.*,
    272 U.S. 1 (1926) .................................................................................. 12, 13

*Utahns for Better Transp. v. United States Dep't of Transp.*,
    305 F.3d 1152 (10th Cir. 2002) ......................................................... 14, 21

*Va. House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019) ........................................................................................ 2

*Village of Niles v. United States Postal Serv.*,
    No. 84-cv-10102, 1985 WL 2900 n.3 (N.D. Ill. Sept. 30, 1985) ................... 4

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ........................................................................................ 3

*Wild Rockies v. Higgins*,
    535 F. Supp. 3d 957 (D. Idaho 2021) ........................................................... 22

*WildEarth Guardians v. Conner*,
    920 F.3d 1245 (10th Cir. 2019) ................................................................. 8, 15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .......................................................................................... 21

**Statutes**

42 U.S.C. § 4336(b)(1) ...................................................................................... 8, 15

**Regulations**

40 C.F.R. § 1508.27(a) ........................................................................................... 16

40 C.F.R. § 1508.27(b)(10) .................................................................................... 18

**Other Authorities**

90 Fed. Reg. 1945 (Jan. 10, 2025) ........................................................................ 20

**INTRODUCTION**

Plaintiffs' claim in this case, as set forth in their Complaint, is explicitly limited to whether the Forest Service satisfied its procedural obligations under the National Environmental Policy Act ("NEPA") to adequately consider the Project's potential impacts on Lake Monroe. ECF No. 1 ¶¶ 96-104 (Count One, alleging a violation of NEPA and the Administrative Procedure Act ("APA")). The Court in *Monroe I* determined that the Forest Service violated NEPA "by failing to fully evaluate the environmental effects to Lake Monroe" and remanded that "portion of the decision" for the Forest Service to complete further analysis. *Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv. ("Monroe I")*, 595 F. Supp. 3d 713, 726 (S.D. Ind. 2022). The Forest Service thereafter completed a Supplemental Information Report on the effects of the Project on Lake Monroe, but the Court in *Monroe II* determined that a Supplemental Information Report could not correct a deficiency in the underlying Environmental Assessment ("EA"). *Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv. ("Monroe II")*, No. 4:23-cv-12-TWP-KMP, 2023 WL 2683125, at *6 (S.D. Ind. March 29, 2023). The Court in *Monroe II* stated that "[w]ere this merely a question of science, this decision would likely favor the Forest Service. But the type of deficiency here is a procedural one." *Id.* The Forest Service, by completing a Supplemental EA to assess the Projects' impacts on Lake Monroe, has now remedied the procedural defect.

The Court should reject Plaintiffs attempt, in a reply brief no less, to expand the scope of this litigation. While Plaintiffs are correct that this Court did not decide their Environmental Impact Statement ("EIS") claim in *Monroe I*, it is indisputable that the only issue before this Court is whether the Forest Service's conclusion that the Project will not have significant environmental impacts on Lake Monroe was arbitrary and capricious. The Forest Service

1

reasonably determined any effects would not be significant, that determination is entitled to deference, and the Court may not substitute its judgment for that of the agency. *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs.*, 75 F.4th 743, 749 (7th Cir. 2023).

## ARGUMENT

The Court should grant summary judgment in favor of Federal Defendants for three reasons. First, Plaintiffs have completely disregarded their obligation to prove standing. Standing in a past case does not confer standing in this one, and Plaintiffs' declarations make clear that they have not met the standing requirements with respect to their sole claim in this case. Second, Federal Defendants thoroughly analyzed the effects of the Project on Lake Monroe. Plaintiffs' mere disagreement with the agency's conclusion that the Project will not have significant effects does not render the agency's decision arbitrary or capricious. And third, Federal Defendants complied with NEPA by completing a Supplemental EA. An EIS is not required where the impacts to the environment will not be significant. *Protect Our Parks, Inc. Buttigieg*, 97 F.4th 1077, 1092-93 (7th Cir. 2024) ("Having found and explained that 'the proposed action will not significantly affect the environment,' the agencies were not also required to prepare the more elaborate environmental impact statement." (quoting *Ind. Forest All. Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 856 (7th Cir. 2003))).

## I.    Plaintiffs Have Not Established Standing.

Plaintiffs assert that Federal Defendants did not raise standing in the prior litigation as somehow justifying Plaintiffs' failure to meet their burden here. But standing is jurisdictional and cannot be waived or forfeited. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction,

2

and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."). Regardless of the prior litigation, Plaintiffs must still prove standing for each claim in this case. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109-110 (1983). Plaintiffs have failed to do so.

For Article III standing, Plaintiffs must prove (1) they have suffered an "injury in fact" that is "concrete and particular" and "actual or imminent"; (2) the injury is fairly traceable to defendants' conduct; and (3) the injury can be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations in original) (citations omitted). "Allegations of possible future injury" are insufficient. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

In addition to Article III standing, a plaintiff must demonstrate prudential standing. *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) ("Even if constitutional standing is established, however, there are also prudential limitations of the court's exercise of jurisdiction. A complaint may meet the standards for constitutional standing, yet fail to overcome prudential standing hurdles.") (citations omitted). To demonstrate prudential standing in an APA case, the alleged injury must be "within the zone of interests to be protected or regulated" by the statute in question, which is NEPA in this case. *Port of Astoria v. Hodel*, 595 F.2d 467, 474-75 (9th Cir. 1979) (citation omitted) (holding port district's "pecuniary losses and frustrated financial expectations" outside NEPA's zone of interest); *see also Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1235-36 (D.C. Cir. 1996) ("NEPA's rather sweeping list of interests to be served . . . do not include purely monetary interests . . . .").

## A.    Plaintiff Monroe County Board of Commissioners Lacks Standing.

Plaintiff Monroe County Board of Commissioners lacks both Article III and prudential standing. Plaintiffs attach to their Reply Brief the Declaration of Julie Thomas, a Commissioner

on the Monroe County Board of Commissioners. ECF No. 30-1. Like in their Opening Brief though, Plaintiffs fail to offer any argument as to how Ms. Thomas's declaration establishes standing. ECF No. 30 at 18. A review of Ms. Thomas's declaration reveals that it is inadequate. The Thomas Declaration makes clear that the Monroe County Board of Commissioners (the "County") is suing Federal Defendants on behalf of County residents and businesses—it has not asserted a proprietary interest of its own. *See* ECF No. 30-1 ¶¶ 3, 5 (concern for citizen recreational opportunities), 6 (concern for health of citizens), 7 (concern for economic harm to local businesses).

A county, however, cannot sue the federal government as *parens patriae*[1] on behalf of its citizens or others. *Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982) ("A State does not have standing as *parens patriae* to bring an action against the Federal Government."); *Town of Milton, Mass. v. Fed. Aviation Admin.*, 87 F.4th 91, 96-97 (1st Cir. 2023) (holding municipality lacked standing to bring NEPA claims on behalf of its citizens); *City of North Miami v. Fed. Aviation Admin.*, 47 F.4th 1257, 1277 (11th Cir. 2022) (holding political subdivisions cannot sue the federal government based on "alleged harm to their residents"); *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir. 1973) ("[P]olitical subdivisions such as cities and counties, whose power is derivative and not sovereign, cannot sue as *parens patriae* . . . ."); *Village of Niles v. U.S. Postal Serv.*, No. 84-cv-10102, 1985 WL 2900, at *5 n.3 (N.D. Ill. Sept. 30, 1985) (noting political subdivisions such as cities and counties cannot sue on behalf of their citizens); *see also* ECF No. 1 ¶ 9 (stating County is a "local governing body"). Rather, to establish standing, the County must show harm to its

---

[1] "*Parens patriae* means literally 'parent of the country.'" *Alfred L. Snapp & Son, Inc., v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 600 (1982).

own proprietary interests. *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601 ("A State may, for example, own land or participate in a business venture. As a proprietor, it is likely to have the same interests as other similarly situated proprietors."); *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044-45 (9th Cir. 1979) (rejecting City's alleged proprietary interest as "speculative"). The County has alleged no such harm.

Further, to the extent the County is alleging a financial harm to its tax base through harm to local businesses, such harm is outside NEPA's zone of interests, and the County also lacks prudential standing to bring their NEPA claim. *Mountain States Legal Found.*, 92 F.3d at 1235-36 ("NEPA's rather sweeping list of interests to be served . . . do not include purely monetary interests . . . ."); *Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993) ("[A] plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA.").

Finally, to the extent the County alleges that the Project will somehow thwart its efforts to protect Lake Monroe water quality, that harm is caused by the County's own failure to regulate, not by this Project. *Compare* AR0014630 (County zoning ordinance exempting agricultural uses and rural forest harvesting from erosion control measures) *with* ECF No. 30-1 ¶ 4 (alleging existing water quality impairment from "human-caused activities such as forest management and agriculture"). A self-inflicted injury does not meet a party's burden to establish Article III standing. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 418 (2013); *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 518 (7th Cir. 2010) (holding self-inflicted injury insufficient for standing). The County lacks standing to sue Federal Defendants in this case.

### B.    The Stant Declaration Is Untethered to the Only Claim in this Case.

Plaintiffs still have not demonstrated how the Project's potential impact to Lake Monroe

injures Jeff Stant on behalf of Plaintiff Indiana Forest Alliance. Plaintiffs recycle Mr. Stant's declaration from the prior litigation, in which he alleges a general injury to his recreational enjoyment of the Hoosier National Forest. But his declaration fails to offer the requisite specificity with respect to this Project. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (asserting that plaintiffs must set forth specific facts supporting their injury); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990) ("[Standing is] not satisfied by averments which state only that one of respondent's members uses unspecified portions of an immense tract of territory, on some portions of which mining activity has occurred or probably will occur by virtue of the governmental action.").

Nor is his general allegation of harm tied to the only claim in this case—the potential impacts to Lake Monroe water quality. *Protect Our Parks, Inc. v. Buttigieg*, 39 F.4th 389, 399 (7th Cir. 2022) (requiring causal connection between agency deficiency and injury). Plaintiffs argue that a remand, by potentially delaying or cancelling the Project, would <u>indirectly</u> redress Mr. Stant's alleged injury. But Article III requires more. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Lujan*, 504 U.S. at 565-66 (rejecting "ecosystem nexus" argument for standing); *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996) ("To fully establish injury in fact, a plaintiff must be able to show that a separate injury to its concrete, particularized interests flows from the agency's procedural failure."). Mr. Stant's declaration may have been sufficient for standing in *Monroe I*, but it is not sufficient in this case.

### C.    The Mitchell-Bruker Declarations Do Not Allege an Injury Caused by the Project.

Finally, Plaintiffs submit a supplement to Dr. Sherry Mitchell-Bruker's declaration,[2] but again, they ask the Court to sift through that document to determine whether they have met their burden. S.D. Ind. Local Rule 56-1(h) ("No Duty to Search Record. The court has no duty to search or consider any part of the record not specifically cited in the manner described in subdivision (e)."). Regardless, Dr. Mitchell-Bruker has not alleged in either declaration that the Project will change how she uses or studies Lake Monroe. She alleges only that the current water quality has reduced her enjoyment, an injury not caused by the Project. Her injury stems from the existing water quality, which is likely to continue irrespective of the Project in the absence of appropriate land use regulations by fellow plaintiff Monroe County Board of Commissioners. *See* AR0012501. Her injury is neither caused by the Project, nor redressable by a decision favorable to Plaintiffs. *Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6, 14 (D.D.C. 2016) ("Because [plaintiffs] cannot show that their only injury—caused by bulkheads that existed when their complaint was filed—will be redressed by the injunctive and declaratory relief sought, their substantive injury will not support standing to pursue their NEPA and [Clean Water Act] claims."); *see also Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006) (holding alleged harm not redressable where third party activity would continue to cause the same harm). Remanding the Decision or enjoining the Project will not improve Lake Monroe's water quality. Plaintiffs have not met their burden of proving standing, and the Court should grant summary judgment in favor of Federal Defendants.

---

[2] Federal Defendants object to the Supplemental Mitchell-Bruker Declaration to the extent it purports to offer expert testimony, which is beyond the scope of record review. *See* ECF No. 27 at 22-23.

## II.    Federal Defendants Complied with NEPA.

Despite Plaintiffs' conclusory allegations to the contrary, the Forest Service has thoroughly studied and analyzed whether the Project would have significant impacts on water quality generally and Lake Monroe specifically. *See* AR0003513-27 (EA); AR0002557-95 (Effects to Soil and Water Specialist Report); AR0012487-501 (Supplemental EA). The question is not whether the Project is significant—as Plaintiffs' repeatedly assert in error—but whether the Project "has a reasonably foreseeable significant effect on the quality of the human environment" as required under NEPA. 42 U.S.C. § 4336(b)(1). The Forest Service reasonably concluded that the Project would not have significant environmental effects, including on Lake Monroe, AR0012501, AR0012528 (FONSI), and that determination is entitled to deference. *Ind. Forest All.*, 325 F.3d at 859 ("If an agency considers the proper factors and makes a factual determination on whether the environmental impacts are significant or not, that decision implicates substantial agency expertise and is entitled to deference.").

Plaintiffs have not shown what more could possibly be accomplished by an EIS. *WildEarth Guardians v. Conner*, 920 F.3d 1245, 1263-64 (10th Cir. 2019) ("[Plaintiff] has utterly failed to show what could be accomplished through an EIS that would be material to whether the Project should proceed as planned."). The deficiency in *Monroe II* was procedural, not scientific. *Monroe II*, 2023 WL 2683125, at *6 ("Were this merely a question of science, this decision would likely favor the Forest Service. But the type of deficiency here is a procedural one."). The Forest Service remedied that procedural defect by issuing a Supplemental EA. Although they repeatedly try to shift the burden, Plaintiffs have the burden of proof, and they must prove that the Forest Service committed a "clear error of judgment." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416

8

(1971)); *see also Monroe I.*, 595 F. Supp. 3d at 718. Plaintiffs' mere opposition to the Project is insufficient to meet that burden. *Highway J. Citizens Grp. v. Mineta*, 349 F.3d 938, 956-57 (7th Cir. 2003) ("To be sure, the defendants did not change their position as [a] result of [plaintiffs'] requests and challenges, but they were not required to do so.") (citing *Roberstson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). The Court should find in favor of Federal Defendants on Plaintiffs' single NEPA claim.

A.    **The Forest Service Reasonably Concluded that the Project Will Not Significantly Affect Lake Monroe.**

The Forest Service has analyzed the potential impacts to Lake Monroe exhaustively, first by looking at the impacts of any timber operations on Lake Monroe in the Forest Plan EIS, AR0015923-24; then by considering the Project's impacts to water quality generally in the EA, AR0003513-27; AR0002557-95 (Effects to Soil and Water Specialist Report); and most recently by looking specifically at the Project's potential impacts to Lake Monroe water quality in the Supplemental EA, AR0012487-501. The Forest Service concluded:

> [w]ith adherence to Forest Plan guidance, the use of design features and BMPs, and proper monitoring, this project would have minimal to no effects on water quality in any water body and particularly to Lake Monroe itself, which lies several miles downstream from the project sites.

AR0012491.

Plaintiffs fail to distinguish any of the case law cited by Federal Defendants or counter the numerous record citations supporting the Forest Service's reasoned analysis of the Project's potential effects on Lake Monroe. *See* ECF No. 27 at 29-34. Instead, they rely only on their own public comments and opinions and grandiose rhetoric regarding the importance of the reservoir. In short, Plaintiffs argue that the Forest Service's analysis is deficient simply because Plaintiffs disagree with the outcome. But this is not enough to meet their burden of proof. *Robertson*, 490

9

U.S. at 350 ("It is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process."); *Protect Our Parks*, 39 F.4th at 388 ("NEPA is a procedural statute, not a substantive one."); *Ind. Forest All.*, 325 F.3d at 865 ("The administrative record demonstrates that the agency followed required procedures and considered relevant data, and therefore did not act arbitrarily or capriciously in arriving at its conclusion.").

Plaintiffs first suggest that the potential addition of even "small amounts" sediment is enough to warrant a significance finding. ECF No. 30 at 7. Not only does this argument fly in the face of common sense, but Plaintiffs cite no case law in support. Further, there is no evidence that small amounts of sediment would <u>significantly</u> "exacerbate" Lake Monroe's poor "preexisting condition," *Highway J. Citizens Grp.*, 349 F.3d at 954, 956 (upholding agency determination that project would not significantly affect the existing condition), particularly considering the ongoing contamination from other sources. AR0012488-90 (detailing contamination sources listed in the Lake Monroe Watershed Management Plan).

Next, Plaintiffs reiterate their reliance on a Kentucky study that considered the effectiveness of Best Management Practices ("BMPs"). ECF No. 30 at 22. The Forest Service considered this study and reasonably concluded that it was not analogous to the Project because it involved a much larger project area and steeper slopes. AR0011826-27. The Kentucky study looked at "complete clearcuts on very steep slopes that averaged 45%." *Id.* By contrast, clear cutting represents only a small portion of this Project and will it be implemented on lesser-sloped ground. AR0011827; AR0012059 (noting only 9% of harvest acres will be clear cut). As shown on the following map, clear cutting is not planned for steep slopes:



AR0012060 (showing that clear cut units (identified by black outlines) all occur in low gradient areas (green shading)). Plaintiffs' contention that the projects differ by a matter of degrees is rebutted by the record.

Plaintiffs next attack the Forest Service's track record for BMP implementation, again relying only on their own public comments. Plaintiffs offer a string of AR citations allegedly in support of their claim that the Forest Service has been unable to implement BMPs effectively. ECF No. 30 at 19. However, on review, Plaintiffs cite (1) a question from a commentor regarding monitoring, AR0000416; (2) a scoping comment telling the Forest Service what it "must" do, AR0002077; (3) unsupported allegations regarding BMP monitoring, AR0011518; (4) Plaintiffs' opinions, AR0010816; and (5) Plaintiffs' unsupported comments, AR0001550, AR0001553-54. None of these documents constitute evidence of BMP ineffectiveness or undermine the Forest Service's Decision.

Plaintiffs go one step further by relying on a partial quotation from the Hoosier National Forest 2020 and 2021 Biennial Monitoring Report in their public comments. ECF No. 30 at 24. As the Forest Service explained in its response to Plaintiffs' comments, smaller projects do not require an operations plan. AR0011826.

> Smaller projects that were monitored as part of the program don't usually have an operations and maintenance plan, so by national standards, they get rated as "Not" in the implementation column. This doesn't mean that they were not implemented, it means there was no plan. The effectiveness for every project monitored in that plan was "excellent."

*Id.* Monitoring shows that even these projects have effective BMPs regardless. *Id.*

The Forest Service follows BMP monitoring guidelines to protect water quality using the National Best Management Practices for Water Quality Management on National Forest System Lands Technical Guide. AR0012491-92. The National BMP Program consists of (1) core BMPs; (2) standardized monitoring protocols to evaluate implementation and effectiveness; (3) data management and reporting; and (4) corresponding national direction. AR0012052. As detailed in Federal Defendants Opening Brief, the Project incorporates Forest Plan standards, binding design features, and BMPs to ensure that the Project does not increase sedimentation. AR0012509-10; AR0012512-13; AR0012514-22; AR0012526; *see also* ECF No. 27 at 30-31. These guardrails far exceed the BMPs recommended by Plaintiffs themselves. AR0013936.

Plaintiffs essentially argue that the government will not implement and monitor the design features and BMPs the Decision requires. But courts presume government officials will lawfully implement their decisions. *See Godfrey v. United States*, 997 F. 2d 335, 338 n.4 (7th Cir. 1993) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926))). In

addition to requiring binding design features and BMPs, the Decision includes BMP monitoring to ensure efficacy. AR0012493 ("Certified timber sale administrators and harvest inspectors oversee the implementation of silviculture activities to ensure proper implementation of Forest Plan guidance, BMPs, and project design."). If a BMP is not performing as expected, monitoring will allow the Forest Service to take corrective action. *Id.*

Finally, Plaintiffs challenge the adequacy of the Forest Service's turbidity monitoring for the Project, alleging that four stations will not be enough. As a preliminary matter, turbidity monitoring is in addition to Project and BMP monitoring during timber operations and after prescribed burns. AR0012493. There is no requirement in the Forest Plan or elsewhere to install turbidity monitoring stations; the Forest Service built this feature into the Project as an additional measure to ensure no significant impacts. The Forest Service specifically offered to work with Plaintiffs on additional monitoring, but Plaintiffs declined to respond. AR0015626-27.

Turbidity will be monitored at four sites throughout the life of the Project. AR0012493. One site will monitor water quality entering the Project area, and another will monitor water quality exiting the Project area, thereby isolating the impact from the Project area itself. *Id.* Two additional sites allow the Forest Service to monitor turbidity within the area of timber operations. *Id.*; *see also* AR0012493 (Map of turbidity monitoring stations). This methodology is reasonable, well-informed, and entitled to deference. *Marsh*, 490 U.S. at 378. And contrary to Plaintiffs allegations, the Forest Service did take baseline turbidity readings to understand the existing water quality conditions prior to the Project. AR0002564-65 (listing turbidity readings). While Plaintiffs advocate for more turbidity monitoring stations, the Forest Service's focus on four strategically placed sites does not render the agency's determination arbitrary, capricious, or a violation of law. *Habitat Educ. Ctr., Inc. v. U.S. Forest Serv.*, 673 F.3d 518, 528 (7th Cir. 2012)

("We take care to distinguish between claimed deficiencies in an EIS that are 'merely flyspecks' and those that are 'significant enough to defeat the goals of informed decisionmaking and informed public comment.'" (quoting *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1163 (10th Cir. 2002))).

Federal Defendants considered the Project's effects on Lake Monroe and concluded that those effects would not be significant. Plaintiffs have not met their burden of proving this was a clear error of judgment, and the Court should defer to the agency. *Sauk Prairie Conservation All. v. U.S. Dep't of the Interior*, 944 F.3d 664, 678 (7th Cir. 2019) (explaining that when "an agency considers the proper factors and makes a factual determination on whether the environmental impacts are significant or not, that decision implicates substantial agency expertise and is entitled to deference" (citation omitted)); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 593 F. Supp. 2d 1019, 1024 (E.D. Wis. 2009) ("The court is not empowered to examine whether the agency made the 'right' decision, but only to determine whether, in making that decision, the agency followed the procedures prescribed by NEPA."), *aff'd*, 609 F.3d 897 (7th Cir. 2010).

### B. The Forest Service Was Not Required to Complete an EIS.

The Forest Service made a reasoned decision to prepare a Supplemental EA and a Finding of No Significant Impact ("FONSI") rather than an EIS. The Supplemental EA included detailed explanations for the Forest Service's conclusion that the Project would not have significant impacts on Lake Monroe, including a map of the relevant watersheds, photographs documenting existing erosion, a discussion of design features that would prevent erosion, and an analysis of how the Project would actually <u>reduce</u> erosion by repairing old roads and trails. AR0012487-503. These pages of documented analysis belie Plaintiffs' claim that the Forest

Service did not provide any explanation whatsoever for its decisionmaking. *Compare* AR0012487-503 and AR0012524-34 *with* ECF No. 30 at 19.

The Forest Service was not required to complete an EIS given its determination that the environmental impacts will not be significant. *Protect Ourt Parks*, 97 F.4th at 1092-93 ("Having found and explained that 'the proposed action will not significantly affect the environment,' the agencies were not also required to prepare the more elaborate environmental impact statement." (quoting *Indiana Forest All.*, 325 F.3d at 856)); 42 U.S.C. § 4336(b)(1) (requiring EIS only where "reasonably foreseeable significant effect on the quality of the human environment"). As this district has confirmed, "[u]nder the arbitrary and capricious standard of review, the Forest Service's decision not to prepare an EIS will be upheld if it was based on a consideration of relevant factors and was made on a rational basis." *Ind. Forest All., Inc. v. U.S. Forest Serv.*, No. 99-cv-214, 2001 WL 912751, at * 6 (S.D. Ind. July 5, 2001) (citing *State of Wisconsin v. Weinberger*, 745 F.2d 412, 417 (7th Cir. 1984)), *aff'd*, 325 F.3d 851 (7th Cir. 2003); *see also Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 763 (2004) ("An agency's decision not to prepare an EIS can be set aside only upon a showing that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (citations omitted)). Again, despite their suggestion otherwise, Plaintiffs have the burden of proof on this issue as well. *Monroe I*, 595 F. Supp. 3d at 718.

Nor have Plaintiffs identified any other area of environmental impact that would warrant further analysis in an EIS. *See WildEarth Guardians*, 920 F.3d at 1263-64 ("[Plaintiff] has utterly failed to show what could be accomplished through an EIS that would be material to whether the Project should proceed as planned."). Again, the question is not whether the Project is significant, but whether it may have significant effects on the environment. 42 U.S.C.

§ 4336(b)(1). As outlined below and in Federal Defendants' Opening Brief, ECF No. 27 at 40-51, the Forest Service considered the required regulatory factors and provided citations to the EA and Supplement EA analyses on which it based each of its conclusions. AR0012528-30. Plaintiffs' have not shown the agency's decision not to prepare an EIS was arbitrary or capricious. *Pub. Citizen*, 541 U.S. at 763.

### 1.    The Forest Service Considered the Context of the Project.

The Forest Service considered the context of the project and determined that it was a site-specific project. AR0012528. Accordingly, the Forest Service considered the environmental impacts on the locale, rather than other contexts such as society as a whole. *Id.*; *see also* 40 C.F.R. § 1508.27(a) (2019) ("For instance, in the case of a site-specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole.").

Plaintiffs again argue that the project is large, but it is unclear how that impacts the Forest Service's delineation of context. *See Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 448 (9th Cir. 2024) ("Context simply delimits the scope of the agency's action, including the interests affected.") (citation omitted). Even if the Project area is large, by assessing impacts on the locale, the Forest Service considered the environmental impacts on the entire area before concluding that those impacts would not be significant. Plaintiffs do not and cannot claim that the Project would have global or other impact.

Plaintiffs also argue that the Forest Service prepared an EIS for the German Ridge Restoration Project—over 20 years ago—and was therefore required to do so for this Project. Far from requiring an EIS if one has been prepared in the past, courts have held that agencies do not need to prepare an EIS where they have prepared one previously and concluded that there were not significant environmental impacts. *See Native Ecosystems Council v. U.S. Forest Serv.*, 428

16

F.3d 1233, 1243 (9th Cir. 2005) (EA sufficient where the Forest Service prepared an EIS on a similar project in the past and concluded it did not have significant effects). If anything, the fact that a previous Forest Service EIS concluded that there would not be significant impacts supports the Forest Service's decision to prepare a Supplemental EA instead of an EIS in this case.

### 2.    The Project Is Not Highly Controversial.

Plaintiffs continue to argue that the Project is "highly controversial," while citing only their own expert. But "'highly controversial' in NEPA context does not encompass any public opposition to a proposed action, and instead only applies to a "<u>substantial dispute</u> as to the size, nature, or effect of an action." *Indiana Forest All.*, 325 F.3d at 857 (emphasis added); *see also Native Ecosystems Council*, 428 F.3d at 1240 ("The use of the word 'highly' in the NEPA regulations to modify 'controversial' and 'uncertain' means that information merely favorable to [the plaintiff's] position in the NEPA documents does not necessarily raise a substantial question about the significance of the project's environmental effects."). Otherwise, any party could force an agency to prepare an EIS simply by finding one expert with a differing view. *Indiana Forest All.*, 325 F.3d at 857 ("mere opposition to a proposed action will not create high controversy."); *id.* (noting that if controversy were equated with opposition, the EIS outcome would be governed by a "heckler's veto" (quoting *State of N.C. v. Fed. Aviation Admin.*, 957 F.2d 1125, 1134 (4th Cir.1992))).

As courts have recognized, a mere disagreement amongst experts is not sufficient to make a project "highly controversial." *See, e.g.*, *California v. Bernhardt*, 472 F. Supp. 3d 573, 628 (N.D. Cal. 2020) ("To be controversial, a dispute must go beyond a disagreement of qualified experts." (citation omitted)). And contrary to Plaintiffs' assertions, the Forest Service is not asking the Court to choose between experts but stating that a dispute between experts is not

17

sufficient to make the Project "highly controversial" under NEPA. *See Nat'l Parks Conservation Ass'n v. United States*, 177 F. Supp. 3d 1, 33-34 (D.D.C. 2016) ("[E]ven the submission of declarations from numerous experts who claim that a project will have significant adverse impacts on an area alone fails to rise to the level of controversy under NEPA.") (cleaned up). The declaration of Plaintiff's expert is not sufficient to make the Project highly controversial.

### 3.    The Project Does Not Significantly Impact Public Health or Safety.

Plaintiffs cry that the Project "run[s] afoul of the Lake Monroe Watershed Management Plan."[3] ECF No. 30 at 33. However, not only is the Lake Monroe Watershed Management Plan entirely voluntary, but the Project <u>exceeds</u> the recommended BMPs in that Plan. AR0012493; AR0013936. The Forest Service analyzed the effects on Lake Monroe at length in the Supplemental EA and concluded that there was no risk to health or safety. AR0012491-7. Plaintiffs argue that "[i]f the Service is going to accelerate that eutrophication by implementing the Project and adding yet more nutrient-laden sediment to this already impaired watershed, the public has a right to know what kind of downstream effects await them." ECF No. 30 at 33. But the Forest Service conducted an analysis and concluded that the Project would not result in sediment reaching the reservoir. There is no evidence that the Project, <u>10 miles</u> upstream from Lake Monroe, poses any significant threat to public health or safety. AR0012496. While Plaintiffs feel differently, they cannot dispute the fact that the Forest Service undertook the analysis and reached a different conclusion. *See Protect Our Parks*, 39 F.4th at 397 ("NEPA is a procedural statute, not a substantive one.")

---

[3] In their opening brief, Plaintiffs argued that the Project violated "Local Law or Requirements" because they claimed it worked against the goals of the Lake Monroe Watershed Management Plan. But Plaintiffs failed to address in their reply the fact that the Lake Monroe Watershed Management Plan is not a "law or requirement" pursuant to 40 C.F.R. § 1508.27(b)(10).

Faced with the Seventh Circuit's clear and dispositive holding in *Protect Our Parks* that substantive disagreements with an agency's conclusions are not the proper basis for a NEPA action, Plaintiffs attempt to distinguish *Protect Our Parks* factually by claiming that building the Obama Presidential Center in a "densely populated urban area" on the South Shore in Chicago was not as significant as a forest management project in "Indiana's only National Forest." ECF No. 30 at 35. But if anything, a project in the middle of one of the largest cities in the nation seems more likely to impact public health than one in an area that is largely uninhabited and several miles from Lake Monroe. And even if the cases were not factually comparable, Plaintiffs cannot escape the legal holding that substantive disputes about environmental impacts cannot be brought under NEPA where the agency analyzed the factor and reached a different conclusion.

### 4.    The Project's Cumulative Effects Will Not Be Significant.

The Forest Service considered the cumulative impacts to Lake Monroe and concluded the Project would not result in significant cumulative effects. AR0012529-30; AR0012499-501. In the face of record evidence, Plaintiffs attempt to manufacture a dispute by selectively quoting the Supplemental EA and then claiming that the Forest Service stated that the Project would impact Lake Monroe's water quality. ECF No. 30 at 36 (citing *id.* at 22). In reality, the Forest Service stated that "this project would have minimal to no effects on water quality in <u>any water body and particularly to Lake Monroe itself, which lies several miles downstream from the project sites</u>." AR0012491 (emphasis added). The Forest Service has consistently concluded that the Project would not result in significant impacts to Lake Monroe.

19

## 5.    No "Unique Characteristics" Warrant an EIS.[4]

Plaintiffs argue that the Hoosier National Forest is "unique" because it contains "some of the oldest, most mature forests in the eastern United States."[5] ECF No. 30 at 31, 32. But Plaintiffs' only support for this claim is their opening brief, which in turn cites their own commentary on the Project. In reality, the Forest Service concluded that "the project area is typical of the [Central Hardwood Region] in both forest type and age class with the exception of the nonnative pine plantations." AR0012455. The Supplemental EA extensively considered the age and composition of the trees in the Project area before concluding that the Project would not impact unique characteristics of the area. AR0012453-59. Nor does the Project's proximity to Lake Monroe, miles downstream, itself warrant an EIS. *Cascade Forest Conservancy v. U.S. Forest Serv.*, 577 F. Supp. 3d 1163, 1187 (W.D. Wash. 2021) ("That the area is unique, however, does not mean the impact on it will necessarily be 'significant.'" (citation omitted)), *aff'd*, No. 22-35087, 2022 WL 10964667 (9th Cir. Oct. 19, 2022).

At bottom, Plaintiffs' EIS argument amounts to nothing more than "flyspecks," which are insufficient to establish a violation of NEPA. *Habitat Educ. Ctr., Inc.*, 673 F.3d at 528 (requiring courts to distinguish between mere "flyspecks" and deficiencies "significant enough to defeat the

---

[4] In a footnote, Plaintiffs attempt to revive a claim from *Monroe I*, arguing that the Project "will necessarily destroy" habitat for threatened and endangered species. ECF No. 30 at 38 n.3. Not only did Plaintiffs not assert that argument in their Complaint or Opening Brief in this case, but the Court already decided this claim, and Plaintiffs' argument is barred by *res judicata*. *See Monroe I*, 595 F. Supp. 3d at 726 ("The Court agrees that Defendants complied with the [Endangered] Species Act.").

[5] Plaintiffs abandoned their claim with respect to the Draft Old Growth Amendment by not asserting it on summary judgment. *Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003). Regardless, the Forest Service withdrew the Draft Old Growth Amendment last month. Land Management Plan Direction for Old-Growth Forest Conditions Across the National Forest System; Withdrawal, 90 Fed. Reg. 1945 (Jan. 10, 2025).

goals of informed decisionmaking and informed public comment" (quoting *Utahns for Better Transp.*, 305 F.3d at 1163)).

### III.    Plaintiffs Failed to Respond to Evidentiary Objections.

Plaintiffs failed to respond to Federal Defendants' Evidentiary Objections. ECF No. 27 at 22-23. As a result, the Court should strike or decline to consider the declarations of Sherry Mitchell-Bruker, ECF No. 24-2, and Jeff Stant, ECF No. 24-3, to the extent they purport to offer expert testimony, which is beyond the scope of judicial review. *Fla. Power & Light Co. v. Lorin*, 470 U.S. 729, 743-44 (1985); *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009).

### IV.    Remedy

For the avoidance of doubt, Plaintiffs have not met their burden of proof, Federal Defendants oppose vacatur, and vacatur is unwarranted in this case. *See* Fed. Defs.' Resp. to Pls.' Compl. ¶ 6, ECF No. 15 (denying Plaintiffs are entitled to any of the relief they seek). Vacatur "has the effect of an injunction," and thus Plaintiffs must make a "clear showing" that they are entitled to this extraordinary relief. *ForestKeeper v. La Price*, 270 F. Supp. 3d 1182, 1226 (E.D. Cal. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)), *aff'd in part sub nom. Sequoia ForestKeeper v. La Price*, 723 F. App'x 481 (9th Cir. 2018). Whether vacatur is appropriate depends in part on the "seriousness of the offenses." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, `50-51 (D.C. Cir. 1993). Remand without vacatur is remedy within the Court's discretion. *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1289-90 (11th Cir. 2015) (noting remand without vacatur is permitted under the APA) (citing cases). And as this Court recognized in *Monroe I*, vacatur is unnecessary where an agency need only further explain its decision. *Monroe I*, 595 F. Supp. 3d at 726

(remanding a "portion of the decision" to "fully evaluate the environmental effects to Lake Monroe"); *see also Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013) ("We find it plausible that FERC can redress its failure of explanation on remand while reaching the same result."); *All. for Wild Rockies v. Higgins*, 535 F. Supp. 3d 957, 980-81 (D. Idaho 2021) (directing the agency to issue a supplemental Decision Memo but not vacating the decision). Accordingly, Federal Defendants properly requested supplemental briefing on remedy if the Court finds any legal errors.

## CONCLUSION

After conducting a thorough analysis, the Forest Service reasonably concluded that the Project would not have significant environmental effects on Lake Monroe, and that determination is entitled to deference. The Forest Service satisfied its procedural obligations under NEPA. Plaintiffs have not met their burden of proving the Forest Service's Decision in this case was arbitrary, capricious, or a violation of law, and the Court should grant summary judgment in favor of Federal Defendants.

Dated: February 11, 2025                    Respectfully submitted,

LISA LYNN RUSSELL
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Reade E. Wilson*
READE E. WILSON, Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 305-0299
Fax: (202) 305-0275
Email: reade.wilson@usdoj.gov

RACHANA N. FISCHER, Assistant U.S. Attorney
United States Attorney's Office
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, Indiana 46204
Telephone: (317) 226-6333
Direct Dial: (317) 229-2414
Fax: (317) 226-5027
E-mail: Rachana.Fischer@usdoj.gov

*Attorneys for Federal Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2025, a copy of the foregoing was filed

electronically. Service of this filing will be made on all ECF-registered counsel by operation of

the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>*/s/ Reade E. Wilson*</u>
READE E. WILSON
Trial Attorney

24