**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

|  |  |  |
|---|---|---|
| MONROE COUNTY BOARD OF COMMISSIONERS, et al., | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 1:24-cv-01560-TWP-KMB |
| UNITED STATES FOREST SERVICE, et al., | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MOTION FOR**
**THE PRESUMPTIVE RELIEF OF VACATUR UNDER THE**
**<u>ADMINISTRATIVE PROCEDURE ACT</u>**[*]

Matthew R. Arnold
William S. Eubanks II
EUBANKS & ASSOCIATES PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(843) 718-4513
matt@eubankslegal.com

*Counsel for Plaintiffs*

---

[*] The Court's September 18, 2025 *Order on Cross-Motions for Summary Judgment*, ECF No. 48 (Order), "denied as premature, without prejudice to refil[ing]" Plaintiffs' request for vacatur of the agency actions challenged in this suit and subsequently found unlawful by the Court. *See id.* at 27-28. The instant motion seeking to vacate the challenged agency decisions may be properly regarded as a renewal of Plaintiffs' consistent, long-standing request for the presumptive relief under federal law. *See* ECF No. 1 at 40; *see also* Order at 5-6 (discussing litigation background).

## TABLE OF CONTENTS

Table of Authorities.................................................................................................................. iii

Table of Acronyms ................................................................................................................... v

Introduction.............................................................................................................................. 1

Background ............................................................................................................................... 2

Legal Standard ......................................................................................................................... 4

Argument .................................................................................................................................. 5

    I.     Vacatur Is the Presumptive Remedy for NEPA and APA Violations ................................. 5

    II.    Vacatur Is Warranted Here, Where the Service's NEPA Violations Seriously Undermine the Validity of the Challenged Decision ............................................................................. 7

    III.   Remand Without Vacatur Would Undermine NEPA By Rewarding Defendants' Chronic Noncompliance with the Act's Preference for Informed Decisionmaking ......................... 9

    IV.   Vacatur Will Not Cause Undue Disruption and is Necessary to Prevent Environmental Harm ................................................................................................................................. 10

Conclusion ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
  429 F.3d 1136 (D.C. Cir. 2005) .................................................................................... 5

*Allied–Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ................................................................................. 4, 9

*City of Chicago v. U.S. Dep't of Homeland Sec.*,
  No. 25-C-5463, 2025 WL 3171302 (N.D. Ill. Nov. 13, 2025) ................................... 6

*Conservation Nw. v. Bonnie*,
  No. 08-cv-1067, 2014 WL 12710341 (W.D. Wash. Feb. 18, 2014) ......................... 11

*Hoosier Envt'l Council v. Nat. Prairie Ind. Farmland Holdings, LLC*,
  No. 4:19-cv-71, 2023 WL 2571678 (N.D. Ind. Mar. 20, 2023) ............................ 4, 6

*Illinois Pub. Telecomms. Ass'n v. FCC*,
  752 F.3d 1018 (7th Cir. 2014) ................................................................................ 4, 6

*Johnson v. U.S. Office of Personnel Mgmt.*,
  783 F.3d 655 (7th Cir. 2015) .................................................................................. 4, 5

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Pena*,
  No. 3:12-CV-02271, 2015 WL 1567444 (D. Or. Apr. 6, 2015) .............................. 11

*Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* (*Monroe I*),
  595 F. Supp. 3d 713 (S.D. Ind. 2022) ............................................................. 2, 3, 8

*Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* (*Monroe II*),
  No. 4:23-cv-00012, 2023 WL 2683125 (S.D. Ind. Mar. 29, 2023) ..................... 3, 11

*Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* (*Monroe III*),
  No. 1:24-cv-01560, 2025 WL 2687723 (S.D. Ind. Sept. 18, 2025) ................. *passim*

*Pollinator Stewardship Council v. EPA*,
  806 F.3d 520 (9th Cir. 2015) .................................................................................. 10

*Pub. Emps. for Envt'l Resp. v. U.S. Fish & Wildlife Serv.*,
  177 F. Supp. 3d 146 (D.D.C. 2016) .......................................................................... 6

*Robertson v. Methow Valley Citizens Council*,
  490 U.S. 332 (1989) ................................................................................................ 12

*Schurz Communications v. FCC*,
   982 F.2d 1043 (7th Cir. 1992) ................................................................ 6

*Se. Alaska Conservation Council v. U.S. Forest Serv.*,
   468 F. Supp. 3d 1148 (D. Alaska 2020) ................................................ 11

*Seven County Infrastructure Coalition v. Eagle County*,
   605 U.S. 168 (2025) ............................................................................... 7

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
   985 F.3d 1032 (D.C. Cir. 2021) .......................................................... 8, 9

*Sugar Cane Growers Co-op. of Fla. v. Veneman*,
   289 F.3d 89 (D.C. Cir. 2002) ................................................................. 5

*WildEarth Guardians v. Bernhardt*,
   423 F. Supp. 3d 1083 (D. Colo. 2019) .................................................... 8

*WildEarth Guardians v. Bureau of Land Mgmt.*,
   870 F.3d 1227 (10th Cir. 2017) .............................................................. 8

*Zero Zone, Inc. v. Dep't of Energy*,
   832 F.3d 654 (7th Cir. 2016) ............................................................. 4, 9

## Statutes

Administrative Procedure Act,
   5 U.S.C. § 706(2)(A) ................................................................ 1, 4, 7, 12

National Environmental Policy Act,
   42 U.S.C. §§ 4321–4347 .......................................................................... 1

   42 U.S.C. § 4332(2)(C) ............................................................................ 7

iv

**TABLE OF ACRONYMS**

| | |
|---|---|
| APA | Administrative Procedure Act |
| BMPs | Best Management Practices |
| CEQ | Council on Environmental Quality |
| DN | Decision Notice |
| EA | Environmental Assessment |
| EIS | Environmental Impact Statement |
| FONSI | Finding of No Significant Impact |
| NEPA | National Environmental Policy Act |
| NFS | National Forest System |
| SEA | Supplemental Environmental Assessment |
| SIR | Supplemental Information Report |

**INTRODUCTION**

Pursuant to the Court's September 18, 2025 order granting summary judgment on the merits of their claims, *see Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* (*Monroe III*), No. 1:24-cv-01560, 2025 WL 2687723 (S.D. Ind. Sept. 18, 2025) (Pratt, C.J.), ECF No. 48 (Order), Plaintiffs Monroe County Board of Commissioners, Indiana Forest Alliance Inc., Hoosier Environmental Counsel, Inc., and Friends of Lake Monroe (collectively, "Plaintiffs") respectfully request that this Court effectuate its merits decision by vacating the Decision Notice and Finding of No Significant Impact ("DN/FONSI"), prepared by Defendant U.S. Forest Service ("Forest Service" or "Service") in support of the Houston South Vegetation Management and Restoration Project ("Project"), as violative of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347. The Court's merits Order is perfectly clear—the Service's third bite at the apple once again "failed to satisfy NEPA's procedural requirements" by merely substituting arbitrary and pretextual justifications for the actual analysis mandated by NEPA and the APA. Just as they have since the beginning of this dispute back in 2020, Plaintiffs continue to maintain that vacatur of the Service's DN/FONSI, as well as the various NEPA analyses that preceded it, is both the ordinary and the appropriate remedy for the reasons explained herein.

The Court's latest merits Order represents the third time that it has rejected as irrational Defendants' efforts to revamp the same old NEPA analysis. Despite multiple opportunities to cure fundamental NEPA defects identified by the Court, the Service has steadfastly refused to take a hard look at the Project's impacts on Lake Monroe's water quality and improperly relied on unsupported mitigation assumptions, thin tiering to the Forest Plan, and conclusory reasoning to justify its FONSI for this Project. *See* Order at 16-24. The deficiencies identified therein by

1

the Court go to the heart of NEPA's important procedural requirements and cast serious doubt on the credibility of the agency's decisionmaking process for this Project.

While the government will no doubt ask for remand without vacatur here, three strikes should be enough. Having failed to use its previous opportunities to correct its deficient NEPA analyses during previous remands, the Service has given the Court little, if any, reason to believe that this time will be different. Rather than retaining jurisdiction over this matter indefinitely, and/or having to supervise the agency's progress during an open-ended remand, the Court should instead send the Service back to take a fresh look at the reasonably foreseeable impacts of the Project on Lake Monroe by vacating the DN/FONSI and accompanying NEPA analyses for this Project. Not only would such an outcome adhere to precedent from the Seventh Circuit and its sister courts of appeal, it would also be consistent with this Court's own prior examination of the equities in this same case.

Binding Seventh Circuit precedent, as well as persuasive authority from other federal courts including this one, militate in favor of vacating the DN/FONSI and remanding the Project to the Forest Service for further proceedings consistent with NEPA and the APA.

## **BACKGROUND**

This litigation represents the third time Plaintiffs have been forced to expend their limited resources defending their interests in the Hoosier National Forest from multiple decades of logging and prescribed burning via implementation of the Houston South Project. *See* Order at 1; *see also Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* (*Monroe I*), 595 F. Supp. 3d 713 (S.D. Ind. 2022) (Pratt, C.J.); *Monroe Cnty. Bd. of Comm'rs v. U.S. Forest Serv.* (*Monroe II*), No. 4:23-cv-00012, 2023 WL 2683125 (S.D. Ind. Mar. 29, 2023) (Pratt, C.J.).[2] A little more than three

---

[2] The factual and procedural circumstances precipitating this Motion are documented in detail by the Court's Order, ECF No. 48, which Plaintiffs incorporate herein by reference. Hence, the

years ago, in the first lawsuit over this Project, the Court correctly held that the Service's EA and

FONSI for the Project failed to evaluate potential impacts on Lake Monroe—Indiana's largest

reservoir and the sole drinking water source for more than 145,000 people. *See Monroe I*, 595 F.

Supp. 3d at 724 (faulting the Service's analysis for disregarding "how the Houston South Project

may exacerbate [Lake Monroe's ecological] problems" via increased sedimentation and/or failed

BMPs); *see also* AR0009345 (slip-copy of the Court's March 30, 2022 opinion in *Monroe I*).

Expecting the Service to promptly conduct that analysis, the Court remanded those decisions to

the Service for further analysis. *Monroe I*, 595 F. Supp. 3d at 724; *see also* AR0009350 (same).

Rather than conduct a lawful NEPA analysis, the Service attempted to paper over the

deficiencies identified by the Court through a Supplemental Information Report ("SIR"), which

this Court later enjoined as procedurally improper. The Service then prepared a Supplemental

Environmental Assessment ("SEA") and again issued a FONSI, concluding that the Project

would not have significant impacts because Best Management Practices ("BMPs") would

eliminate or reduce all harms to an insignificant level. AR0012528 (August 2024 DN/FONSI).[3]

In its September 18, 2025 Order, the Court rejected that conclusion. *See, e.g.*, Order at 17.

The Court held that the Forest Service again failed to take a hard look at the Project's impacts on

---

discussion focuses instead on aspects of the case necessary to facilitate the Court's selection of
an appropriate remedy in response to the Court finding that "Defendants violated NEPA by
failing to fully evaluate the environmental effects to Lake Monroe," Order at 26.

[3] The Service's regulations implementing NEPA provide that where the Service prepares "an EA
and FONSI" to satisfy its NEPA duties for a given project, the decisionmaker "must document a
decision to proceed with an action in a [DN]," which includes the Service's "rationale" for the
decision, as well as "the conclusions drawn and the decision(s) made based on the supporting
record, including the EA and FONSI." 36 C.F.R. § 220.7(c); *see also id.* § 220.3 (defining DN to
mean a "concise written record of the responsible official's decision when an EA and finding of
no significant impact (FONSI) have been prepared"). Those regulations permit the Service to
combine its DN and FONSI into a single document, *see id.* § which the Service has done here,
*see* AR0012524-34 (August 2024 combined Project DN and FONSI).

Lake Monroe, relied on outdated and inapposite mitigation studies, improperly tiered to generalized Forest Plan analysis, and left the Court to speculate about the Project's real-world consequences. *See id.* at 26; *see also id* at 20 ("[T]he Forest Service took more of a cursory glance at the effectiveness of its BMPs rather than a hard look."). The Court granted summary judgment to Plaintiffs and temporarily enjoined the Project pending resolution of the remedy.

The sole remaining question is whether the unlawful DN/FONSI for the Project should be vacated. It should, according to the APA and applicable precedent as explained below.

## LEGAL STANDARD

The APA instructs reviewing courts that they "shall . . . hold unlawful and set aside agency action" that is arbitrary, capricious, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The Seventh Circuit has repeatedly recognized that vacatur is the ordinary and presumptive remedy for unlawful agency action. *See Illinois Pub. Telecomms. Ass'n v. FCC*, 752 F.3d 1018, 1022 (7th Cir. 2014) ("The normal remedy for an unlawful agency action is to vacate it."); *Zero Zone, Inc. v. Dep't of Energy*, 832 F.3d 654, 677–78 (7th Cir. 2016) ("When a court determines that an agency's action is unlawful, the ordinary result is vacatur.").

Although courts possess equitable discretion to remand without vacatur in limited circumstances, that remedy is the rare exception, not the rule. *Hoosier Envt'l Council v. Nat. Prairie Ind. Farmland Holdings, LLC*, No. 4:19-cv-71, 2023 WL 2571678, at *4 (N.D. Ind. Mar. 20, 2023). To determine whether a case is the "unusual" sort, i.e., one where deviation from "the "presumptive and default remedy mandated by statute" is appropriate, *see id.*, courts have generally followed the two-part test set forth by the D.C. Circuit in *Allied–Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, (D.C. Cir. 1993). *See Nat. Prairie*, 2023 WL 2571678, at *4 & n.2 (citing *Allied-Signal* but observing that "remand without vacatur" is meant to correct "mere minor legal defects" rather than irrational or pretextual decisionmaking). Ultimately, a

4

reviewing court applying the *Allied-Signal* framework generally must weigh: (1) the seriousness of the agency's errors, and (2) the disruptive consequences of vacatur. *See id.* at 150-51.

Although the Seventh Circuit has acknowledged that reviewing "courts have discretion to craft other remedies" in response to violations of the APA, it has steadfastly maintained that vacatur remains "the presumptive remedy" for violations of the Act. *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 663 (7th Cir. 2015) (citing *Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151 (D.C. Cir. 2005); *Sugar Cane Growers Co–op. of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002)).

## ARGUMENT

### I.   Vacatur Is the Presumptive Remedy for NEPA and APA Violations

The Court already determined that the Forest Service's NEPA review was arbitrary and capricious for failing to take a hard look at environmental impacts and for issuing a FONSI without reasoned analysis. This determination triggers the statutory requirement to "set aside" unlawful agency action. 5 U.S.C. § 706(2)(A). In the Seventh Circuit, vacatur is the presumptive remedy where an agency decision is unlawful. *Johnson*, 783 F.3d at 663; *see also City of Chicago v. U.S. Dep't of Homeland Sec.*, No. 25-C-5463, 2025 WL 3171302 (N.D. Ill. Nov. 13, 2025) ("[B]ecause the plaintiffs in this case have brought APA claims, vacatur would be an appropriate or even the presumptive remedy if those claims are successful."). Placing the burden on the government to justify the continuation of an otherwise illegal agency action recognizes that vacatur, not remand without it, best effectuates the APA's purpose of preventing agencies from acting without adequate legal foundation. *See Ill. Pub. Telecomms.*, 752 F.3d at 1023 (courts ordinarily vacate unlawful agency rules or decisions); *see also Nat. Prairie*, 2023 WL 2571678, at *4 (rejecting agency request for "partial vacatur or remand without vacatur" because

5

"[t]he APA says what it says," making vacatur of arbitrary agency action "the presumptive and default remedy mandated by statute" (citation omitted)).

NEPA itself creates a "strong presumption in favor of vacatur" for decisions made without proper environmental review, because NEPA is an "action-forcing statute" whose core purpose is to ensure informed agency decisions. Agency action taken on the basis of deficient NEPA review lacks a lawful foundation and cannot remain in place while the agency attempts to cure the defects. *See Pub. Emps. for Envt'l Resp. v. U.S. Fish & Wildlife Serv.*, 177 F. Supp. 3d 146 (D.D.C. 2016) (collecting cases that "bear[] out the primacy of vacatur to remedy NEPA violations"); *see also Schurz Communications v. FCC*, 982 F.2d 1043 1056-57 (7th Cir. 1992) (vacating arbitrary agency decision in part due to prior pattern of noncompliance by the agency).

The DN/FONSI here is legally deficient because it rests on NEPA analyses that the Court has found defective in multiple respects, including because the Service's SEA, like the other NEPA documents before it, failed to evaluate objectively how Lake Monroe's already impaired watershed will be further impacted by implementation of this massive logging and burning Project of unprecedented size in this Forest's history—including, specifically, the overt addition of untold tons of sediment into that same watershed. In other words, in the SEA, Defendants again failed to evaluate the foreseeable consequences of Project implementation on Lake Monroe. Because the SEA did not comply with NEPA, the DN/FONSI—which relied heavily on that SEA—is arbitrary and capricious by extension. This, too, justifies vacatur of the DN/FONSI and the deficient NEPA analysis that preceded those decisions.

The Supreme Court's recent decision in *Seven County Infrastructure Coalition v. Eagle County*, 605 U.S. 168 (2025), further reinforces that this case is one in which vacatur of the unlawful decision is appropriate. To be sure, the *Seven County* majority recognized that not all

NEPA deficiencies automatically "require a court to vacate the agency's ultimate approval of a project, at least absent reason to believe that the agency might disapprove the project if it added more to the [NEPA document]." *Id.* at 185 (citing 5 U.S.C. § 706).

Nevertheless, the Supreme Court itself acknowledged (albeit implicitly) that *Seven County* did *not* alter the applicable standard of review in NEPA cases; instead, the touchstone of NEPA review remains unchanged, and asks "whether the agency action was reasonable and reasonably explained." *Id.* at 180.

The Court's merits Order persuasively explains why Defendants' DN/FONSI fails both prongs of that test. *See Monroe III*, 2025 WL 2687723, at *8-13. Hence, *Seven County* does not displace the APA's presumption in favor vacatur nor does it diminish Plaintiffs' entitlement to that remedy in this case.

II.   **Vacatur Is Warranted Here, Where the Service's NEPA Violations Seriously Undermine the Validity of the Challenged Decision**

The seriousness of the Forest Service's NEPA errors weighs heavily in favor of vacatur. NEPA requires an agency to take a hard look at significant environmental impacts, ensure informed decisionmaking, and explain why a project's impacts will not be significant. *See* 42 U.S.C. § 4332(2)(C).

In *Monroe III*, the Court found that the Forest Service failed to provide a reasoned, site-specific analysis of the Project's effects on water quality in the Lake Monroe watershed despite significant evidence that: (a) the watershed contains highly erodible soils, (b) Lake Monroe is the primary drinking water source for over 145,000 people, and (c) Project activities could reasonably be expected to contribute sediment and other pollutants to the watershed, exacerbating Lake Monroe's already diminished water quality.

7

The internal contradictions and unsupported mitigation assumptions in the SEA only compounded Defendants' irrational decision to forgo any credible examination of the Project's impacts on the Lake Monroe watershed.[4] Courts have repeatedly found that similar deficiencies are indicative of NEPA violations that warrant vacatur. In *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, the D.C. Circuit ultimately affirmed the vacatur of the agency's permits after it repeatedly failed to produce adequate environmental analysis following remand. *See* 985 F.3d 1032, 1052-53 (D.C. Cir. 2021). Similarly, courts routinely vacate environmental analyses wherein the preparing agency stakes its environmental findings on conclusory mitigation assurances unaccompanied by evidentiary support. *See WildEarth Guardians v. Bureau of Land Mgmt.*, 870 F.3d 1227, 1239 (10th Cir. 2017) (noting that NEPA error "lies at the heart" of the requirement that agencies make informed decisions) (quoted in *Zero Zone* context).

By resorting (again) to blatantly outcome-determinative analyses to prop up a widely unpopular Project in the Hoosier National Forest, Defendants have demonstrated the value of vacatur in these circumstances and why Congress adopted it as the presumptive remedy under the APA; by hitting the reset button on this NEPA process, the Court can automatically remove some of the disincentives (e.g., bureaucratic inertia) that might otherwise preclude a more robust analysis here. *See, e.g.*, *WildEarth Guardians v. Bernhardt*, 423 F. Supp. 3d 1083, 1105 (D. Colo.

---

[4] Beginning in 2024, Plaintiffs began deploying turbidity monitoring stations throughout the Lake's watershed with the goal of assessing the Service's BMPs in situ. Although only a small percentage of the Project has been implemented to date (i.e., pre-injunction), the few ground disturbing activities that have taken place have already registered statistically significant sediment pulses in the watershed in the immediate aftermath of those activities. Expanding the data set will improve the accuracy of this monitoring; however, early suggestions of BMP failures in the Project area remain troubling to Plaintiffs and underscore the need for vacatur while the Service objectively analyzes the foreseeable impacts to Lake Monroe.

2019) (explaining that vacatur is sometimes necessary to ensure that "any new NEPA analysis" is more than "merely perfunctory," and "actually informative" for the agency before it acts).

In short, Defendants' serious, repeated analytical failures underscore that vacatur is required to ensure the law is followed and NEPA's core purposes are fulfilled before the Forest Service takes any further action to implement the Project.

**III.    Remand Without Vacatur Would Undermine NEPA By Rewarding Defendants' Chronic Noncompliance with the Act's Preference for Informed Decisionmaking**

Courts in this district and the Seventh Circuit require more than cosmetic corrections when an agency has been given multiple chances to comply with NEPA and has consistently failed. The Forest Service has now litigated this Project in three separate NEPA challenges before this Court. In each iteration of its analysis—from the original EA, to the SIR, and now the SEA—Defendants have failed to resolve the fundamental defect identified by this Court more than three years ago in *Monroe I. Compare* Order at 26 (holding that "the SEA fails to explain the significance of the Project's impact on Lake Monroe, or how BMPs would be effective enough to completely mitigate any possible significant impacts" therefrom), *with Monroe I*, 595 F. Supp. 3d at 723-24 (faulting Defendants' original EA for its myopic reliance on "the use of best practices to reduce negative impacts," and its concomitant failure to address "concerns regarding Lake Monroe's water or how the Houston South Project may exacerbate [its] problems" via increased sedimentation). Because remand without vacatur would risk another round of procedural repetition without meaningful compliance, vacatur is warranted for this reason as well.

Courts have recognized that remand without vacatur is inappropriate where the agency's errors are persistent and significant and where vacating the decision will not produce undue hardship. *E.g.*, *Standing Rock*, 985 F.3d at 1052–53 (vacating agency decision after repeated

9

failures to correct NEPA deficiencies). Similarly, in *Zero Zone*, the Seventh Circuit emphasized that only "minor or technical" errors justify keeping the agency decision in place during remand, whereas serious legal errors require vacatur. 832 F.3d at 677.

Leaving the DN/FONSI in place would undercut NEPA's action-forcing purpose by allowing the Forest Service to proceed based on repeated, legally inadequate analysis—an analysis, which if lawfully conducted, might compel the Forest Service to consider reducing the extent or duration of logging or burning operations, to remove particularly sensitive locations from the Project's scope, or to abandon the ill-conceived Project altogether. This Court should not countenance continued noncompliance with fundamental statutory obligations.

IV.    **Vacatur Will Not Cause Undue Disruption and is Necessary to Prevent Environmental Harm**

The record here reveals that the second *Allied-Signal* factor also tips heavily in Plaintiffs' favor, given that there is an utter dearth of disruptive consequences attending vacatur of the DN/FONSI here. While they will no doubt claim otherwise, the truth is vacatur simply will not harm the Forest Service whatsoever (let alone irreparably). Nor will vacatur prevent the Service from pursuing lawful forest management. The agency remains free to conduct a proper NEPA analysis and reach a new decision consistent with federal law, including the operative Forest Management Plan which governs this unit of the National Forest System. Vacatur merely restores the status quo temporarily pending lawful decisionmaking—the timeline for which is entirely within the Forest Service's control.

By contrast, if the DN/FONSI were left in place such that Project implementation could lawfully proceed during remand, it will almost certainly result in irreversible environmental harm to Lake Monroe and its watershed, as well as regionally unique old-growth forests located within the proposed burn-path of the Project. *Cf. Pollinator Stewardship Council v. EPA*, 806

10

F.3d 520, 532 (9th Cir. 2015) (minimizing "possible environmental harm" as a result of unlawful agency action is a paramount concern in a reviewing court's *Allied-Signal* analysis). Indeed, as detailed by the Court previously, the Project involves thousands of acres of logging, herbicide use, prescribed burning, and road construction in a highly sensitive watershed; this is precisely why this Court *already* found irreparable harm if this Project proceeds in the absence of full legal compliance. *See Monroe II*, 2023 WL 2683125, at *7. Moreover, if allowed to proceed, the Project threatens to decimate "some of the oldest, most mature forests in the eastern United States." ECF No. 30 at 31 (quoting ECF No. 24-1 at 43-44).

Faced with similar potential losses to forests that take multiple generations to reach comparable levels of maturity as those found in the Hoosier now, reviewing courts have routinely found that the equities favor vacatur of the offending agency action. *Conservation Nw. v. Bonnie*, No. 08-cv-1067, 2014 WL 12710341, at *2-3 (W.D. Wash. Feb. 18, 2014) (vacating RODs where old growth forests would otherwise be released for logging); *see also Se. Alaska Conservation Council v. U.S. Forest Serv.*, 468 F. Supp. 3d 1148, 1155-56 (D. Alaska 2020); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Pena*, No. 3:12-CV-02271, 2015 WL 1567444, at *5–6 (D. Or. Apr. 6, 2015) (characterizing the loss of habitat due to logging as "irreversible" and weighing in favor of vacatur to protect status quo).

It is also notable that the preference for vacatur in these logging cases reflects NEPA's precautionary principle, ensuring that agency actions do not upset primeval ecosystems based on incomplete but otherwise readily available information about the action's foreseeable environmental effects on the Lake and its forested watershed. *See, e.g.*, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 333 (1989) (interpreting NEPA's "sweeping policy goals"

11

to include the "broad public dissemination of relevant [environmental] information" and, ideally, the "preventi[on of] uninformed—rather than unwise—agency action").

NEPA's "look before you leap" approach also animates and reinforces the Court's limited interim injunction pending a ruling on the appropriate remedy, as ordered here. By temporarily enjoining the Project, in other words, the Court seems to have already accurately assessed the potential risk of allowing the Project to move forward in the absence of a legally compliant NEPA review. *See Monroe III*, 2025 WL 2687723. Consistent with NEPA's statutory purpose, and as required by the APA's Section 706, the Court should solidify that relief by vacating the Project DN/FONSI and the NEPA analyses upon which those decisions are predicated.

## CONCLUSION

The Forest Service violated NEPA by failing to take a hard look at environmental impacts, relying on unsupported mitigation, and issuing a DN/FONSI that lacks a convincing justification for its conclusion that the Project will not significantly affect any aspect of the environment. Those violations are serious, chronic, and risk real environmental harm to the citizens who depend on Lake Monroe for its freshwater resources.

For all these reasons, and consistent with this Court's merits Order, Plaintiffs respectfully request that the Court vacate the DN/FONSI and remand the matter to the Service for further proceedings consistent with NEPA and the Court's merits Order.

Respectfully submitted,

/s/ Matthew Arnold

Matthew R. Arnold
EUBANKS & ASSOCIATES PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(843) 718-4513

12

matt@eubankslegal.com

William S. Eubanks II
EUBANKS & ASSOCIATES PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060
bill@eubankslegal.com

W. Russell Sipes
THE SIPES LAW FIRM PC
101 W Ohio St, #760
Indianapolis, IN 46204
(855) 747-3752
wrs@sipeslawfirm.com

*Counsel for Plaintiffs*